UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF INDIANA; STATE OF IOWA; STATE OF LOUISIANA; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF MONTANA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OKLAHOMA; STATE OF RHODE ISLAND; STATE OF TENNESSEE; STATE OF TEXAS; COMMONWEALTH OF VIRGINIA; and STATE OF WISCONSIN ex rel. MARK McGUIRE. | CIVIL ACTION NO.: 12-CV-10132-NMG<br><br><br>FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |

**Plaintiff-Relator**

V.

MILLENNIUM LABORATORIES, INC.

**Defendant**

AMENDED COMPLAINT

PLAINTIFF-RELATOR DEMANDS A TRIAL BY JURY ON ALL COUNTS

1.      Plaintiff-Relator Mark McGuire (the "Relator") brings this action on behalf of the United States of America, 27 States* and the District of Columbia (the "District") to recover monies wrongfully paid by those entities as a result of false claims caused by Defendant Millennium Laboratories, Inc. ("Millennium"). Millennium is a commercial clinical laboratory that performs laboratory tests for physicians' offices, clinics and hospitals. It specializes in processing urine specimens to evaluate whether a patient has ingested licit or illicit drugs. As described at length herein, Millennium has intentionally adopted marketing practices that directly and knowingly lead to the performance of medically unnecessary laboratory tests. Specifically, Millennium solicits physicians and hospitals to order tests to confirm negative drug screens, although such tests are wholly unnecessary and violate the applicable standard of care. Millennium accomplishes this objective by obtaining custom profiles from its customers. It is recognized that such profiles lead to abusive and unnecessary testing, but result in substantial profits for the laboratory engaging in the practice. In order to encourage hospitals to retain Millennium and to complete a custom profile, Millennium offers hospitals rates that are below market, kickbacks and other improper incentives.

2.      Millennium knows that many of these tests are reimbursed by government financed health care programs such as Medicare and Medicaid. Nonetheless it knowingly engages in such behavior to increase its revenues. These

---

*       The States on whose behalf the Plaintiff-Relator brings this action are: California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, and Wisconsin (collectively, the "States").

2

tactics have been successful.  Although the company was only started in 2007, it is now a national presence with a national sales force of over 170 representatives.  Much of Millennium's success results from causing federal and state health payors to pay for millions of dollars of unnecessary urine testing.

## PARTIES

3.      Plaintiff-Relator Mark McGuire ("Relator") is an individual who resides in Boston, MA 02118.  He is the Administrative Director of Laboratory Services at MetroWest Medical Center.

4.      Defendant Millennium Laboratories, Inc. ("Millennium") is a California corporation with a principal place of business in San Diego, CA.  Millennium conducts business in each and every state in the United States on a daily basis.

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1331, this District Court has original jurisdiction over the subject matter of this civil action since it arises under the laws of the United States, in particular the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA")  In addition, the FCA specifically confers jurisdiction upon the United States District Court. 31 U.S.C. § 3732(b).

6.      Pursuant to 28 U.S.C. § 1367, this District Court has supplemental jurisdiction over the subject matter of the claims brought pursuant to the false claims acts of the States on the grounds that the claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.     This District Court has personal jurisdiction over Millennium pursuant to 31 U.S.C. § 3732(a) because the FCA authorizes nationwide service of process and Millennium has sufficient minimum contacts with the United States of America.

8.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) because Millennium transacts business in this judicial district.

9.     The Relator is unaware of any public disclosure of the information or allegations that are the basis of his Complaint. In the event that there has been a public disclosure, the Relator is the original source of the information and allegations contained in this Complaint. Prior to the filing of this action, Relator voluntarily provided information to the United States Government regarding the false claims that are the subject of this Complaint on or before January 17, 2012. The Relator sent notice to the States of the false claims alleged in this Complaint on January 26, 2012.

## FACTUAL ALLEGATIONS

## I.     URINE TESTING AND THE CLINICAL LABORATORY BUSINESS

10.     Urine Drug Testing ("UDT") for clinical medicine purposes is a major diagnostic business in the United States. Thousands of drug tests are routinely performed in connection with medical treatment. These are conducted to determine whether a patient is taking drugs which might interfere with the planned medical treatment; other times they are performed in order to ensure that the patient is compliant with his or her prescription regime. Such tests are very frequently administered in connection with patients undergoing pain management therapy. Such

4

testing is recognized as an appropriate part of treatment in many circumstances and is often reimbursed by public and private insurers.

11.     Not surprisingly, given the vast quantity of tests performed, numerous laboratories compete for the business generated by hospitals and physicians' offices. Much of the cost of processing urine tests comes from the capital investment the processing laboratories have in the sophisticated equipment that performs the testing; the marginal cost of performing individual tests is relatively low. Thus, the more urine tests a commercial laboratory performs, the more money it makes. If the laboratory can process several tests from a single urine specimen, the business can be quite lucrative.

12.     Clinical urine testing is almost always done in two stages. First, the doctor's office or the hospital screens for 11 or 12 different drugs. An 11 panel screening test, or "screen," tests for the presence of cocaine, opiates, amphetamines, methamphetamine, phencyclidine (PCP), MDMA (the active ingredient of Ecstasy), barbiturates, benzodiazepines, methadone, tricyclic antidepressants and oxycodone. A 12 panel screen adds a test for THC, the active ingredient for marijuana. A screen only determines the presence of the various drugs in the urine, it cannot measure the concentration.

13.     There are two methods of performing screens. Screens can be performed in a laboratory by an immunoassay, a well known test that rapidly determines the presence or absence of the tested drugs. Most hospital laboratories are capable of processing this type of test and results are quickly generated.

5

14.    Alternatively, drug screens can be performed in doctors' offices and clinics (known as "Points of Care" or "POCs") with a relatively inexpensive cup which comes with a panel of 11 or 12 treated strips, one for each drug being tested. The strips are dipped into the urine specimen by a medical assistant, and a change in color of the strip will illustrate the presence or absence of the specific drug for which each strip tests. Using POC cups and panels, a physician can receive almost immediate results for the substances tested in his own office.

15.    Due to the possibility of false positives and the fact that screens do not provide information about the quantity of drug detected, when a screen returns a positive result, the standard of care is to perform confirmatory testing for the specific drugs that received a positive result in the screen. Confirmatory testing is conducted in laboratories that can perform mass spectrometry and either gas or liquid chromatography. In contrast to immunoassay analysis or POC screening, confirmatory testing cannot be run for several drugs at the same time, and each test is run separately. Further, the equipment required to perform confirmatory urine testing is more sophisticated—most hospital labs are not equipped to perform confirmatory testing. Instead, doctors' offices and hospitals refer confirmatory drug testing to commercial labs such as Millennium. It usually takes a couple of days to receive results back from confirmatory testing. Confirmatory test results will have information regarding the quantity of the drug found in the urine specimen. False positive or negative results from confirmatory testing are very rare.

6

16. The two step process for drug testing is recognized to be the most cost efficient method of drug detection. Costs relating to drug screening are quite low. Medicare reimbursement of a screen with a POC device is $20.47 for an 11 or 12 panel screen. Reimbursement for immunoassay testing is comparable. Confirmatory testing of individual drugs is much more expensive—Medicare reimburses between $21.87 and $48.36 for each of the twelve classes of drug tested. Although confirmatory testing is more sensitive, to run a full panoply of tests on each and every patient would cost over $300. Moreover, the vast majority of patients do not test positive for any of the drugs; on a healthy population base, only 3 to 5% of all screens return any positive results. By performing confirmatory testing only on those patients who return a positive screen, and then only testing for the drugs that come back positive, slightly more than $20 per patient is spent on drug testing for most patients, and even those that test positive usually incur costs below $75. To perform all or most confirmatory drug tests for patients is medically unnecessary and fiscally irresponsible.

## II.    FEDERAL REIMBURSEMENT FOR URINE DRUG TESTING

17. The United States Government, thorough Medicare, and the individual states, through Medicaid, reimburse a large percentage of all clinical UDT conducted in the United States. When medically necessary, outpatient UDT is covered under Medicare Part B and paid for by the federal government. Medicare not only covers individuals over age 65, but it also provides medical coverage for many individuals who are permanently disabled under the Social Security Act. Persons who are disabled

as a result of chronic pain, are the types of patients who undergo UDT on a regular basis, and many of these patients' testing is covered by Medicare.

18.　The United States also pays for UDT through Tri-Care, its insurance program for Department of Defense personnel and their families, and through the Veteran's Administration. Upon information and belief, Millennium performs UDT for both Tri-Care and the Veteran's Administration, and receives payment for such services directly from the United States.

19.　Medicaid is a joint program between the states and the federal government which also routinely pays for UDT. Medicaid serves the indigent and many of those patients have issues with past or present drug usage that requires routine testing. A significant percentage of patients with chronic pain management problems are also Medicaid patients.

20.　Given the vast quantity of UDT testing paid for by state and federal governments, it is not surprising that the various federal and state health care programs have established limits on what it will pay for. The Medicare statute expressly limits reimbursement to items and services that are "reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U. S. C. § 1395y(a)(1)(A). Each of the state Medicaid programs have similar restrictions on reimbursement. In connection with UDT, it is well understood that Medicare and Medicaid will not pay for unnecessary urine testing. Indeed federal and state authorities have recognized that the potential for abusive billing for testing services is present in connection with UDT and

8

have taken steps to limit the number and types of tests federal and state health programs will pay for.

21.     The Office of the Inspector General of the Department of Health and Human Services ("OIG") has set forth guidelines for curbing abusive urine testing.  In August 1998, OIG issued an OIG Compliance Program Guidance for Clinical Laboratories (the "Guidance").  Although the Guidance does not have the force of a duly promulgated regulation, it sets forth OIG's understanding of how clinical laboratories should conduct their business in order to avoid running afoul of the Medicare/Medicaid fraud and abuse rules.

22.     The Guidance emphasizes that

> claims submitted for services will only be paid if the service is covered, reasonable, and necessary for the beneficiary, given his or her clinical condition. Laboratories should take all reasonable steps to ensure that it is not submitting claims for services that are not covered, reasonable and necessary.

To that extent, the Guidance warns that Medicare will not pay for testing where "documentation in the entire patient record . . . does not support that the tests were reasonable and necessary for a given patient."

23.     Given the emphasis on individualized assessment of need for each lab test ordered, it is not surprising that the Guidance explicitly discourages standing orders. Although not outright prohibited, the Guidance states that "too often [standing orders] have led to abusive practices."  Further "[s]tanding orders in and of themselves are not usually acceptable documentation that tests are reasonable and necessary. . . . As a result of the potential problems standing orders may cause, the use of standing orders is

9

discouraged." When they are used, clinical laboratories have a duty to monitor them to ensure that tests are reasonable and necessary.

24.     The Guidance also discusses a practice used by some laboratories known as custom profiles. These "profiles" are a default set of lab tests to be run each time the physician submits a specimen unless the physician expressly orders a departure from the profile. When a laboratory permits its physicians to request a custom profile, it must also explain to the physician: how Medicare reimburses each test requested in the custom profile; that using a custom profile may result in ordering tests that "are not covered, reasonable or necessary and tests that will not be billed;" and that OIG takes the position that any person who knowingly causes a false claim to be submitted to the government may be subject to sanctions and penalties under civil, criminal and administrative law. When a physician orders a custom profile, the laboratory is also supposed to receive an acknowledgement from the physician that he or she recognizes the implications of using a custom profile.

25.     The Guidance realizes that physicians, not laboratories, are supposed to be the initiators of lab orders. But the OIG expects clinical laboratories to take steps to determine "whether physicians or other individuals authorized to order tests are being encouraged to order medically unnecessary tests."

> More importantly, if the laboratory discovers that it has in some way
> contributed to the ordering of unnecessary tests, the OIG believes the
> laboratory has a duty to modify its practices, as well as notify the
> physician(s) or other authorized individual(s) of its concerns and
> recommend corrective action.

10

The Guidance describes several steps it expects clinical laboratories to take to track proper utilization and to halt the performance of unnecessary tests. Thus, the OIG expects clinical laboratories such as Millennium to police improper utilization and take action to halt it. It certainly does not expect labs such as Millennium to initiate processes that will undoubtedly lead to the submission of false claims.

26.    Most claims for UDT reimbursement under Medicare, Medicaid or other federal programs are submitted by the laboratory that performs the test. However, where a referring laboratory refers less than 30% of its tests to reference laboratories (the laboratories that perform complex testing), it can, essentially, subcontract the processing of UDT to a reference laboratory, pay an agreed upon price, submit the claim for the lab work and then receive full Medicare or Medicaid reimbursement for the tests performed by the reference laboratory. Many hospital laboratories can qualify for this exception to the usual payment rules. These hospital labs can actually profit from referring tests to clinical laboratories if the clinical laboratory charges less than what the hospital will receive from Medicare. Such an arrangement, however, may be unlawful, and constitute the payment of an illegal kickback if the reference laboratory does not inform the federal program that it will accept less for laboratory testing than the amount customarily paid by Medicare or the other federal programs.

## III.   MILLENNIUM HAS KNOWINGLY PRESENTED FALSE CLAIMS FOR PAYMENT

27.    Millennium was formed in 2007 by James Slattery, who has previously been a policeman, a commissioner of aeronautics for the Commonwealth of

11

Massachusetts, a real estate developer and a cell tower entrepreneur. In 2007, he turned his attention to UDT and formed Millennium, which is not a full service clinical laboratory but only performs urine testing. From the start, Millennium's business model has been based on exploiting Medicare and Medicaid reimbursement policies. Prior to 2010, Millennium sold 11 and 12 screen panel cups to physicians and encouraged them to submit claims to Medicare and Medicaid for each drug tested, resulting in Medicare paying physicians approximately $240 for a cup that Millennium sold for slightly more than $5.00. This marketing policy is the subject of a separate False Claims Act lawsuit and resulted in an explicit change in the reimbursement rules that now prohibit this practice. However, the scheme succeeded in making Millennium a major competitor in the UDT market almost overnight, and allowed it to capture the UDT business of numerous physicians' offices who followed its reimbursement advice.

      28.    Millennium's scheme to encourage physicians to overcharge federal and state insurance programs may have gained it customer loyalty and market share, but it did not directly profit from the excess billing. Commencing in 2009, however, Millennium started a new marketing scheme that substantially increased its revenue at the expense of federal and state health care programs. Instead of making custom profiles available to those physicians who requested them, Millennium sales personnel were trained, in derogation of the Guidance, to encourage all physicians to use custom profiles for all UDT. More importantly, Millennium knowingly trained its sales force to have physicians set up their custom profiles to order medically unnecessary tests routinely.

29.    As noted above, the long recognized standard of care in connection with clinical UDT is to only perform confirmatory testing on those drugs which were positive on the screen. Millennium sales representatives were, and are, trained to have all doctors set up custom profiles that routinely order confirmatory testing on just about all drugs that come back negative, as well as those that come back positive. Thus, instead of running a single confirmatory test if a drug screen returned a positive reading for one drug, Millennium has their customers order at least 10 confirmatory tests, one for the positive drug and nine more to confirm that the screen was negative for nine more drugs. (Millennium representatives are trained to not recommend confirmatory tests for phencyclidine (PCP), which is rarely used.) Indeed, even if the screen comes back completely negative, as many screens do, based on the custom profile Millennium has gotten the physician's office to sign, Millennium runs 10 confirmatory tests even when there is no basis to believe the patient has used any of drugs for which he or she is being tested. These 10 unnecessary tests are then billed to Medicare, Medicaid or other federal plans.

30.    There is rarely any medical basis to perform confirmatory tests for drugs that are negative on a drug screen. The most common need for negative confirmatory testing is when a physician has appropriately prescribed one of the drugs covered by the screen, such as a tricyclic anti-depressant, and the drug does not appear to be present in the patient's urine. Even then, additional testing will not be necessary if the patient admits that he or she has been non-compliant. Confirmatory testing on negative screen results should only be ordered on a case by case basis after observation

13

of and consultation with the patient, and cannot properly be ordered based on a standing order or a custom profile.

31.     Millennium sales representatives are trained to inform doctors that there are too many false negatives to rely on drug screens. In reality, years of drug screening and testing have established that false negatives are a rare problem and not worth the expense of double checking all negative tests. While confirmatory UDTs are more sensitive than drug screens, the difference between the two is rarely medically significant and other factors than the presence of the tested for drug in the body may explain why a confirmatory test is positive when a drug screen was negative. Thus, commercial plans will not reimburse for the routine confirmatory testing of negative screen results. Further, experts in Medicare and Medicaid reimbursement have informed the Relator that routine testing of negative screen results is abusive under Medicare and Medicaid reimbursement rules and would not survive scrutiny if discovered by Medicare and Medicaid officials.

32.     Millennium sales representatives convince doctors' offices to order unnecessary negative confirmations through many techniques. They present the offices with copies of an article that purports to warn physicians about the unreliability of negative screens. The article, however, was financed by Millennium and it controlled the content of the paper. Independent articles, in fact, caution that the type of testing promoted by Millennium will inevitably lead to unnecessary testing because good medical practice will only require confirmatory testing of negative screens on limited occasions.

14

33. Millennium sales representatives are also trained to tell potential customers that Medicare and Medicaid permit all of the confirmatory tests that the doctor wishes to bill and that it is perfectly appropriate to run these tests on a routine basis through a standing order or custom profiles. Some representatives even admit that in the future Medicare and Medicaid may limit the number of confirmatory tests following negative screens, but that currently physicians may order as many as they wish. These statements, of course, are completely false. Medicare and Medicaid will only pay for negative confirmatory testing when it is necessary given the individual circumstances of the patient and such testing cannot be necessary for every patient who undergoes UDT and receives a negative screen result.

34. Millennium sales representatives are compensated based on the number of urine specimens that their customers send out for testing, receiving approximately $6.00 per specimen. This compensation system motivates representatives to have doctors routinely order confirmations on negative screens. Further, the Millennium sales representatives' supervisors instruct the sales force to obtain custom profiles from each physician for a minimum of 10 confirmatory tests. Supervisors make representatives return repeatedly to their customers until the customers agree to provide a profile that will call for at least ten tests. In fact, many Millennium customers have executed custom profiles that routinely require 18 or 25 tests. In addition to confirming tests for all 11 or 12 drugs on the POC cup, Millennium presses its customers to include validity testing as part of their profile as well as routine testing for drugs that are not included in the POC screen. Validity testing is used to determine

15

whether a patient has adulterated, diluted or substituted a urine specimen.  Four

separate tests are performed (and billed).  Validity testing should be reserved for cases

when there is a reason to believe that the patient has tampered with the specimen.

Validity testing makes no sense when the screen returns positive results or results that

were expected based on the drugs being prescribed, and therefore it should not be used

as a default choice for all testing.  Nonetheless, Millennium sales representatives are

trained to press physicians to include validity testing as the default on their custom

profiles, and inform the physicians that Medicare and Medicaid have no objection to

routine validity testing.

     35.     Another tactic used by Millennium to obtain market share is to provide

physicians with free POC cups.  Providing physicians with a valuable diagnostic tool

for free encourages physicians to send confirmations to Millennium.  Doctors are

supposed to be instructed that they cannot bill Medicare, Medicaid or another insurer

for POC testing if they obtain free POC cups, but there is no attempt to verify whether

the physicians who accept this benefit actually refrain from billing public or private

insurers.

     36.     Technically, a physician's submission of a custom profile does not

necessarily mean that all tests marked on the form will actually be administered to all

patients.  Each UDT order requires a specific requisition where it is possible to override

the tests ordered on the custom profile.  However, if no action is taken, the tests

indicated on the custom profile form will be performed and nowhere on the requisition

form does Millennium inform the physician what tests will be performed if no changes

are necessary. Moreover, in some cases the physician does not even sign the custom profile. The profiles only have to be signed by a person with authority to represent the physician; they are not the equivalent of a prescription. In fact, in actual practice, the tests ordered rarely depart from those indicated on the custom profile, which is precisely the reason Millennium representatives press so hard to obtain such profiles and why Millennium's management strongly encourages representatives to get at least 10 tests ordered on each custom profile.

37.     The Guidance requires clinical laboratories that offer custom profiles to make disclosures about the necessity of exercising judgment in prescribing lab tests, warning that use of custom profiles may result in unnecessary uncovered testing and that seeking reimbursement for unnecessary tests may violate federal law. Such disclosures are contained in the custom profile form used by Millennium, but in a small typeface and surrounded by other standard form boilerplate such that the disclosure is ineffective and inconsequential. Moreover, the disclosure is wholly negated by the false oral representations that Millennium representatives are specifically trained to deliver and which completely contradict the disclosures mandated by the Guidance. The "disclosure" contained in the custom profile form is "compliance theatre;" it provides the illusion that Millennium is in compliance with OIG's rules, but is in fact never reviewed with the customers by the representative and is not intended to educate, enlighten or warn the signatory of the form.

38.     In order to obtain reimbursement for UDT, all physician orders must include a diagnosis code that Medicare, Medicaid and other federal programs use to

17

ensure that the tests ordered are medically necessary. Millennium sales representatives

have admitted to the Relator that they coach physicians' offices on what codes to use to

ensure reimbursement. Indeed, sales representatives have admitted to the Relator that

in order to ensure reimbursement, Millennium will make sure that physicians' offices

have an acceptable diagnostic code premarked on blank requisition forms. These forms

can then be used to order UDT regardless of the patient's condition or diagnosis. It is,

of course, unlawful to use UDT requisition forms that are not individually completed

with information specifically tailored to the patient for whom the testing is sought.

    39.    As a result of Millennium's aggressive marketing practices, numerous

physicians' offices across the country have executed custom profile forms that routinely

require 10 or more confirmatory tests regardless of the individual patient's condition or

needs. Based on these profiles, and subsequent requisitions, Millennium routinely bills

for such tests. The Relators cannot identify each and every unnecessary test for which

Millennium has caused claims for reimbursement by Medicare or Medicaid, but the

following doctors are representative examples of physicians who, due to Millennium's

sales tactics, routinely order medically unnecessary urine tests.

| Doctor | Office | Address | Comments |
|--------|--------|---------|----------|
| Dr. Janet Pearl | Complete Pain Care | 1094 Worcester Road, Framingham, MA | |
| Dr. Roberto Feliz | New England Pain Management Consultants | Hyde Park, MA | Orders tests on 300 specimens a month.  Consistently orders 7 confirmatory tests on all patients |
| Dr. Alexander Weingarten | Comprehensive Pain Management | 121 Eileen Way Syosset, NY | Orders 150 tests per week; routinely confirms all 13 panel drugs |
| Dr. Robert Duarte | Pain & Headache Treatment Center | 1554 Northern Blvd. Manhasset, NY 11030 | 5-15 specimens per day, ordering 25 confirmations for each specimen |

18

The doctors listed above have been regular customers of Millennium for at least six months prior to the filing of this Complaint.

40.       There are hundreds, perhaps thousands, of physicians who are customers of Millennium that routinely order medically unnecessary urine tests due to Millennium's marketing practices and its routine, but improper, use of custom profiles.

## IV.    MILLENNIUM HAS KNOWINGLY CAUSED FALSE CLAIMS TO BE PRESENTED FOR PAYMENT

41.       Physicians' offices are not the only medical providers who prescribe UDT. Hospitals and clinics also require confirmatory testing and Millennium in the last six months has established a marketing program to capture this business. Hospitals generate many times more tests than physicians' offices. A medium sized hospital, such as the Relator's institution, MetroWest Medical Center ("MetroWest"), performs more than 5,200 urine immunoassays each year. MetroWest, however, does not have the facilities to perform confirmatory testing and must send such specimens out to a reference laboratory. Out of the 5,200 screens performed annually at MetroWest, only 550 require confirmatory testing. Routine confirmatory testing of negative screens at that institution would increase the amount of outsourced testing almost tenfold.

42.       At least three Millennium sales representatives, one with supervisory responsibility, have called on the Relator with the goal of obtaining MetroWest's UDT business. The representations of all of the sales representatives have been uniform. All have made the same promises and the same offers. One sales person, who is no longer employed by Millennium, confirmed that Millennium sales representatives are trained

to give the representations that were made to the Relator in his capacity as the Administrative Director of Laboratory Services at MetroWest.

43.     Millennium sales representatives have represented to the Relator that through the use of custom profiles, MetroWest can increase its income by approximately $300,000 annually if it turns its confirmatory testing business over to Millennium. Millennium's sales representatives have represented that if MetroWest's confirmatory testing is sent Millennium, they will only bill MetroWest 85% of what Medicare will reimburse MetroWest for the testing. By routinely performing at least 13 tests on each specimen submitted, no matter what testing is medically necessary, MetroWest will bill approximately $1.5 million more for drug testing and will keep over $230,000 after paying 85% of those reimbursements to Millennium. (An additional $80,000 would be generated by 6,000 POC cup tests which MetroWest can purchase for $5.25, but receive $20.47 from Medicare reimbursement). One sales representative gave the Relator a sample custom profile for MetroWest that called for the routine performance of a minimum of 17 different confirmatory tests, including all four validity tests.

44.     When the Relator inquired about the propriety of routinely billing Medicare and Medicaid, Millennium informed him "for confirmation testing there is no max. You can test for 45 things, whatever we test for . . . That's the benefit of having a more robust profile, its more revenue for you guys. . . . They are paying for all the confirmations." When the Relator inquired whether he should drop tests if the hospital discovered that there were no false negatives, Millennium told him "your CFO may not

like that because you are getting paid on it so you still might want to test for that. That's judgment you will have to make." At no time did any of the Millennium representatives tell him that Medicare and Medicaid would not pay for medically unnecessary tests and that the submission of claims for medically unnecessary tests through the routine operation of a custom profile would constitute the submission of false claims.

45. Millennium informed the Relator that if he submitted a custom profile on behalf of the hospital, all tests submitted by the hospital would be processed in accordance with its instructions, even if the individual tests were actually ordered by physicians who were unaware of the contents of the hospital's custom profile. Millennium informed the Relator that this would not be a concern because Millennium representatives would attempt to meet with the individual doctors and obtain matching custom profiles from them. The representatives indicated that individual doctors usually provided the custom profiles solicited by Millennium.

46. MetroWest will not turn its business over to Millennium because Millennium's standard practices will necessarily result in billing Medicare, Medicaid, federal payors and all insurance companies for medically unnecessary urine tests. MetroWest is also concerned that billing Millennium for a fraction of the amount MetroWest receives from Medicare constitutes an illegal kickback. However, other hospitals have accepted Millennium's offer of kickbacks and excessive confirmatory billing. Goodall Hospital in Sanford, Maine routinely tests all urine specimens for four confirmations regardless of medical necessity. Our Lady of the Resurrection Hospital in

Chicago, Illinois is another hospital customer of Millennium. When it signed on with Millennium as a customer approximately one year ago, it routinely sent all negative screens to Millennium for several confirmatory tests pursuant to a custom profile solicited by Millennium and under the same type of arrangement proposed to MetroWest where Millennium performs the drug tests at a discount but the hospital bills Medicare and Medicaid at the full reimbursement rate. By inducing these institutions to perform unnecessary urine tests that are submitted to Medicare and Medicaid, Millennium has caused these institutions to present false claims.

## FIRST CAUSE OF ACTION
## VIOLATION OF 31 U.S.C. §3729(a)(1)(A)

47.    The Relator repeats and realleges the allegations set forth in Paragraph 1 through 46 as though set forth herein.

48.    As described in detail above, Millennium has caused the presentation of numerous false claims to the United States through the Medicare and Medicaid programs and other federal health insurance programs for medically unnecessary urine tests due its improper use of custom profiles. Millennium improperly solicited the custom profiles from its customers knowing they would be used to order unnecessary tests on a routine basis, and took no steps to halt unnecessary utilization. Indeed, Millennium encourages such ordering by informing its customers that there is no limit on the number of confirmatory tests Medicare or Medicaid will reimburse. At all times Millennium knew its marketing would cause Medicare and Medicaid to pay for unnecessary urine testing; that was the entire purpose of their custom profile initiative.

49.     Millennium has also caused its hospital and clinic customers to file false claims by processing urine tests below the federal reimbursement rate and allowing the hospitals and clinics to keep the difference.  For these customers, Millennium encourages them to have a "robust" list of tests on their custom billing forms because the more tests that are performed the more the institution will make.  Millennium forthrightly admits that the hospitals and clinics will bill Medicare and Medicaid for many more urine tests when they adopt Millennium's plan. Millennium knew at all times that this increase in testing would result from conducting medically unnecessary tests and that the clinics would present claims to Medicare and Medicaid routinely.

WHEREFORE, Relator, on behalf of the United States of America, requests that this Court:

a.   Enter judgment holding Millennium liable for a civil penalty of $11,000 for each violation of the False Claims Act committed by them;

b.   Enter a judgment against Millennium for three times the amount of damages sustained by the United States because of the their acts;

c.   Award the Relator a percentage of the proceeds of the action in accordance with 31 U.S.C. § 3730;

d.   Award the Relator his costs and reasonable attorneys' fees for prosecuting this action; and

e.   Enter such other relief which the Court finds just and equitable.

## SECOND CAUSE OF ACTION
## VIOLATION OF 31 U.S.C. §3729(a)(1)(B)

50.     The Relator repeats and realleges all of the allegations set forth in
paragraphs 1 through 49 as though set forth herein.

51.     In the regular course of its marketing, Millennium informed its customers
that Medicare, Medicaid and other federal payment programs had no limit on the
amount of confirmatory urine tests the programs would pay for.  These statements were
false and Millennium knew they were false.  They were made for the express purpose of
soliciting custom profiles from their customers that would result in the presentation of
false claims to the government by either Millennium or its hospital and clinic
customers.

52.     Millennium's false statements were material to false or fraudulent claims.
Had Millennium informed its customers that Medicare, Medicaid and the federal
insurance programs discourage the use of standing orders or custom profiles that lead
to the routine ordering of unnecessary confirmatory testing, Millennium's customers
would not have executed the custom profiles.

53.     As a result of the false statements, millions of dollars were spent by
Medicare, Medicaid, and the other federal programs for medically unnecessary urine
tests would never have been ordered and should never have been reimbursed.

WHEREFORE, Relator, on behalf of the United States of America, requests that
this Court:

(a) Enter judgment holding Millennium liable for civil penalties of $11,000 for each violation of the False Claims Act;

(b) Enter a judgment against Millennium for three times the amount of damages sustained by the United States because of their acts;

(c) Award the Relator a percentage of the proceeds of the action in accordance with 31 U.S.C. § 3730;

(d) Award the Relator her costs and reasonable attorneys fees for prosecuting this action; and

(e) Enter such other relief which the Court finds just and equitable.

## THIRD CAUSE OF ACTION
California False Claims Act
Cal. Govt. Code §§ 12650 *et seq.*

54.   Relator repeats and realleges the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55.   By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer or employee of the State of California or of any political subdivision thereof, a false claim for payment or approval, in violation of Cal. Gov't Code § 12651(a)(1).

56.   By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false claim paid or approved by the State of California or by any political subdivision, in violation of Cal. Gov't Code § 12651 (a)(2).

25

57.     California, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

58.     By reason of Millennium's acts, the State of California has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

59.     Pursuant to Cal. Gov't Code § 12651(a), the State of California is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## FOURTH CAUSE OF ACTION
Colorado Medicaid False Claims Act
CRS §§ 25.5-4-304 *et seq.*

60.     Relator repeats and realleges the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

61.     By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer or employee of a Colorado agency a false claim for payment or approval, in violation of CRS §25.5-4-305(a).

62.     By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by a Colorado agency, in violation of CRS §25.5-4-305(b).

63.     Colorado, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid

26

and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

64.     By reason of Millennium's acts, the State of Colorado has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

65.     Pursuant to CRS §25.5-4-305(a), the State of Colorado is entitled to three times actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## FIFTH CAUSE OF ACTION
### Connecticut General Statutes, §17b-301a *et seq.*
### Connecticut False Claims Act

66.     Relator repeats and realleges the allegations set forth in paragraphs 1 through 65 as if fully set forth herein.

67.     By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer or employee of a Connecticut agency a false claim for payment or approval, in violation of Conn. Gen. Stat. § 17b-301b(a)(1).

68.     By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by a Connecticut agency, in violation of Conn. Gen. Stat. § 17b-301b(a)(2).

69.     Connecticut, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid

27

and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

70.     By reason of Millennium's acts, the State of Connecticut has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

71.     Pursuant to Conn. Gen. Stat. § 17b-301b(a), the State of Connecticut is entitled to three times actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

**SIXTH CAUSE OF ACTION**
Delaware False Claims And Reporting Act
6 Del C. §§ 1201 *et seq.*

72.     Relator repeats and realleges the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

73.     By virtue of the acts described above, Millennium knowingly presented, or caused to be presented, directly or indirectly, to an officer or employee of Delaware a false or fraudulent claim for payment or approval, in violation of 6 Del. C. § 1201(a)(1).

74.     By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved by Delaware in violation of 6 Del. C. § 1201(a)(2).

75.     Delaware, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid

28

and continues to pay the claims that would not have been paid but for the acts and/or conduct of Millennium as alleged herein.

76.     By reason of Millennium's acts, the State of Delaware has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

77.     Pursuant to 6 Del. C. § 1201(a), the State of Delaware is entitled to three times the amount of actual damages plus the maximum penalty of $11 ,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

### SEVENTH CAUSE OF ACTION
Florida False Claims Act
Fla. Stat. §§ 68.081 *et seq.*

78.     Relator repeats and realleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

79.     By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer or employee of a Florida agency a false claim for payment or approval, in violation of Fla. Stat. § 68.082(2)(a).

80.     By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by a Florida agency, in violation of Fla. Stat. § 68.082(2)(b).

81.     Florida, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

82.    By reason of Millennium's acts, the State of Florida has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

83.    Pursuant to Fla. Stat. § 68.082(2)(g), the State of Florida is entitled to three times actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

### EIGHTH CAUSE OF ACTION
Georgia State False Medicaid Claims Act
O.C.G.A. § 49-4-168

84.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

85.    By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer, employee, fiscal intermediary grantee or contractor of the Georgia Medicaid Program a false claim for payment or approval, in violation of O.G.C.A. § 49-4-168.1(a)(1).

86.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program, in violation of O.G.C.A. § 49-4-168.1(2)(b).

87.    The Georgia Medicaid program, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

88.     By reason of Millennium's acts, the State of Georgia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

89.     Pursuant to O.G.C.A. § 49-4-168.1(a), the State of Georgia is entitled to three times actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used or caused to be made or used by Millennium.

### NINTH CAUSE OF ACTION
Hawaii False Claims Act
Haw. Rev. Stat. §§ 661-21 *et seq.*

90.     Relator repeats and realleges the allegations set forth in paragraphs 1 through 89 as if fully set forth herein.

91.     By virtue of the acts described above, Millennium knowingly presented, or caused to be presented, to an officer or employee of the State of Hawaii a false or fraudulent claim for payment or approval, in violation of Haw. Rev. Stat. § 661-21(a)(1).

92.     By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Hawaii, in violation of Haw. Rev. Stat. § 661-21(a)(2).

93.     The State of Hawaii, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

31

94.     By reason of Millennium's acts, the State of Hawaii has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

95.     Pursuant to Haw. Rev. Stat. § 661-21(a)(8) the State of Hawaii is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## TENTH CAUSE OF ACTION
### Illinois Whistleblower Reward And Protection Act
740 Ill. Comp. Stat. §§ 175/1 *et seq.*

96.     Relator repeats and realleges the allegations set forth in paragraphs 1 through 95 as if fully set forth herein.

97.     By virtue of the acts described above, Millennium knowingly presented, or caused to be presented, to an officer or employee of the State of Illinois a false or fraudulent claim for payment or approval in violation of 740 Ill. Comp. Stat. § 175/3(a)(1).

98.     By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Illinois, in violation of 740 Ill. Comp. Stat. § 175/3(a)(2).

99.     Illinois, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

32

100.   By reason of Millennium's acts, the State of Illinois has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

101.   Pursuant to 740 Ill. Comp. Stat. § 175/3(a)(7), the State of Illinois is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

### ELEVENTH CAUSE OF ACTION
Indiana False Claims and Whistleblower Protection Act
Ind.Code. §§ 5-11-5.5 *et seq.*

102.   Relator repeats and realleges the allegations set forth in paragraphs 1 through 101 as if fully set forth herein.

103.   By virtue of the acts described above, Millennium knowingly presented, or caused to be presented, to an officer or employee of the State of Indiana a false or fraudulent claim for payment or approval in violation of Ind. Code §§ 5-11-5.5-2(b)(1) and (8).

104.   By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Indiana, in violation of §§ 5-11-5.5-2(b)(2) and (8).

105.   Indiana, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

33

106.   By reason of Millennium's acts, the State of Indiana has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

107.   Pursuant to § 5-11-5.5-2(b), the State of Indiana is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

### TWELFTH CAUSE OF ACTION
Iowa Medicaid False Claims Act
Iowa Code §685 *et seq.*

108.   Relator repeats and realleges the allegations set forth in paragraphs 1 through 107 as if fully set forth herein.

109.   By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer or employee of a Iowa agency a false claim for payment or approval, in violation of Iowa Code §685.2.1.a.

110.   By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by a Iowa agency, in violation of Iowa Code §685.2.1.b.

111.   Iowa, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

112.   By reason of Millennium's acts, the State of Iowa has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

113. Pursuant to Iowa Code 685.2.1, the State of Iowa is entitled to three times actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

**THIRTEENTH CAUSE OF ACTION**
Louisiana False Claims Act/Medical Assistance Programs Integrity Law
46 La. Rev. Stat. Ch. 3 §§ 437.1 *et seq.*

114. Relator repeats and realleges the allegations set forth in paragraphs 1 through 113 as if fully set forth herein.

115. By virtue of the acts described above, Millennium knowingly presented or caused to be presented to Louisiana false or fraudulent claims, in violation of 46 La. Rev. Stat. Ch. 3 §438.3(A).

116. By virtue of the acts described above, Millennium knowingly engaged in misrepresentation to obtain, or attempt to obtain, payment from Louisiana medical assistance programs funds, in violation of 46 La. Rev. Stat. Ch. 3 § 438.3(B).

117. Louisiana, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium alleged herein.

118. By reason of Millennium's acts, the State of Louisiana has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

35

119.    Pursuant to 46 La. Rev. Stat. Ch. 3 § 438.5 and § 438.6, the State of

Louisiana is entitled to three times the amount of actual damages plus the maximum

penalty of $10,000 for each and every false or fraudulent claim, record or statement

made, used, presented or caused to be made, used or presented by Millennium.

### FOURTEENTH CAUSE OF ACTION
Maryland False Health Claims Act
Md. Code Ann., Health-Gen §2-601 *et seq.*

120.    Relator repeats and realleges the allegations set forth in paragraphs 1

through 119 as if fully set forth herein.

121.    By virtue of the acts described above, Millennium knowingly presented or

caused to be presented to an officer or employee of a Maryland agency a false claim for

payment or approval, in violation of Md. Code Ann., Health-Gen §2-602(a)(1).

122.    By virtue of the acts described above, Millennium knowingly made, used,

or caused to be made or used a false record or statement to get a false or fraudulent

claim paid or approved by a Maryland agency, in violation of Md. Code Ann., Health-

Gen §2-602(a)(2).

123.    Maryland, unaware of the falsity of the records, statements and claims

made, used, presented or caused to be made, used or presented by Millennium, paid

and continues to pay the claims that would not be paid but for the acts and/or conduct

of Millennium as alleged herein.

124.    By reason of Millennium's acts, the State of Maryland has been damaged,

and continues to be damaged, in a substantial amount to be determined at trial.

36

125.    Pursuant to Md. Code Ann., Health-Gen §2-602(b), the State of Maryland is entitled to three times actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

### FIFTEENTH CAUSE OF ACTION
Massachusetts False Claims Law
M.G.L. c. 12 §§ 5A *et seq.*

126.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 125 as if fully set forth herein.

127.    By virtue of the acts described above, Millennium knowingly presented, or caused to be presented to the Commonwealth of Massachusetts, a false or fraudulent claim for payment or approval, in violation of M.G.L. c. 12 § 5B(l).

128.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to obtain payment or approval of a claim by the Commonwealth of Massachusetts or any political subdivision thereof, in violation of M.G.L. c. 12 § 5B(2).

129.    Massachusetts, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

130.    By reason of Millennium's acts, the Commonwealth of Massachusetts has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

131.    Pursuant to M.G.L. c. 12 § 5B(9), the Commonwealth of Massachusetts is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

### SIXTEENTH CAUSE OF ACTION
Michigan Medicaid False Claim Act
M.C.L. §§ 400.601 *et seq.*

132.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 131 as if fully set forth herein.

133.    By virtue of the acts described above, Millennium knowingly caused to be presented to Michigan, a false statement or false representation of a material fact in an application for Medicaid benefits, in violation of M.C.L. § 400.603(l).

134.    By virtue of the acts described above, Millennium knowingly caused to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit under the Michigan Medicaid program, in violation of M.C.L. 400.603(2).

135.    Michigan, unaware of the falsity of the statements and claims caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

136.    By reason of Millennium's acts, the State of Michigan has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

137.    Pursuant to M.C.L. § 400.612, the State of Michigan is entitled to three times the amount of actual damages, forfeiture of all amounts received by Millennium

and the maximum penalty of $10,000 for each and every false or fraudulent claim made, used, presented or caused to be made, used or presented by Millennium.

### SEVENTEENTH CAUSE OF ACTION
Minnesota False Claims Act
M.S.A. §15C.01 *et seq.*

138. Relator repeats and realleges the allegations set forth in paragraphs 1 through 137 as if fully set forth herein.

139. By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer or employee of a Minnesota agency a false claim for payment or approval, in violation of M.S.A. §15C.02(a)(1).

140. By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by a Minnesota agency, in violation of M.S.A. §15C.02(a)(2).

141. Minnesota, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

142. By reason of Millennium's acts, the State of Minnesota has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

143. Pursuant to M.S.A. §15C.02(a), the State of Minnesota is entitled to three times actual damages plus the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

39

### EIGHTEENTH CAUSE OF ACTION
Montana False Claims Act
Mont. Code Ann. §§17-8-401 *et. seq.*

144.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 143 as if fully set forth herein.

145.    By virtue of the acts described above, Millennium knowingly presented, or caused to be presented to an officer or employee of a Montana governmental entity, a false or fraudulent claim for payment or approval, in violation of Mont. Code Ann. § 17-8-403(l)(a).

146.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to obtain payment or approval of a claim by governmental entities of Montana, in violation of Mont. Code Ann. § 17-8-403(l) (b).

147.    Montana, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

148.    By reason of Millennium's acts, the State of Montana has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

149.    Pursuant to Mont. Code Ann. § 17-8-403(2), the State of Montana is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## NINETEENTH CAUSE OF ACTION
Nevada False Claims Act
Nev. Rev. Stat. §§ 357.010 *et seq.*

150. Relator repeats and realleges the allegations set forth in paragraphs 1 through 149 as if fully set forth herein.

151. By virtue of the acts described above, Millennium knowingly presented or caused to be presented to Nevada a false claim for payment or approval, in violation of Nev. Rev. Stat. §357.040(1)(a).

152. By virtue of the acts described above, Millennium knowingly made or used, or caused to be made or used, a false record or statement to obtain payment or approval by Nevada of a false claim, in violation of Nev. Rev. Stat. § 357.040(1)(b).

153. Nevada, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

154. By reason of Millennium's acts, the State of Nevada has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

155. Pursuant to Nev. Rev. Stat. § 357.040(1), the State of Nevada is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

41

### TWENTIETH CAUSE OF ACTION
New Jersey False Claims Act
N.J. Stat. Ann. §§2A:32C-1 *et seq.*

156.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 155 as if fully set forth herein.

157.    By virtue of the acts described above, Millennium knowingly presented, or caused to be presented to an employee, officer or agent of New Jersey or any contractor, grantee or recipient of New Jersey state funds, a false or fraudulent claim for payment or approval, in violation of N.J. Stat. Ann. 2A:32-C3a.

158.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid by New Jersey, in violation of N.J. Stat. Ann. 2A:32-C3b.

159.    New Jersey, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

160.    By reason of Millennium's acts, the State of New Jersey has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

161.    Pursuant to N.J. Stat. Ann. 2A:32-C3, the State of New Jersey is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## TWENTY-FIRST CAUSE OF ACTION
New Mexico False Claims Act
N.M.S.A §§ 27-14-1 *et seq.*

162.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 161 as if fully set forth herein.

163.    By virtue of the acts described above, Millennium presented, or caused to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false or fraudulent, in violation of N.M.S.A. § 27-14-4(A).

164.    By virtue of the acts described above, Millennium made, used or caused to be made or used a record or statement to obtain a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false, in violation of N.M.S.A. § 27-14-4(C).

165.    New Mexico, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

166.    By reason of Millennium's acts, the State of New Mexico has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

167.    Pursuant to N.M.S.A. § 27-14-4, the State of New Mexico is entitled to three times the amount of actual damages plus the maximum penalty which may be applicable for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

43

## TWENTY-SECOND CAUSE OF ACTION
New York False Claims Act
N.Y. Fin. Law §§ 187 *et seq.*

168.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 167 as if fully set forth herein.

169.    By virtue of the acts described above, Millennium knowingly presented, or caused to be presented, to employees, officers or agents of New York or New York local governments, false or fraudulent claims for payment or approval, in violation of N.Y. Fin. Law § 189.1(a).

170.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by New York or a New York local government, in violation of N.Y. Fin. Law § 189.1 (b).

171.    New York, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

172.    By reason of Millennium's acts, the State of New York has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

173.    Pursuant to N.Y. Fin. Law § 189.1(g), the State of New York is entitled to three times the amount of actual damages plus the maximum penalty of $12,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

44

## TWENTY-THIRD CAUSE OF ACTION
### North Carolina False Claims Act
N.C.G.S. §1-605 *et seq.*

174.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 173 as if fully set forth herein.

175.    By virtue of the acts described above, Millennium knowingly presented or caused to be presented to an officer or employee of a North Carolina agency a false claim for payment or approval, in violation of N.C.G.S. § 1-607(a)(1).

176.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by a North Carolina agency, in violation of N.C.G.S. § 1-607(a)(2).

177.    North Carolina, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

178.    By reason of Millennium's acts, the State of North Carolina has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

179.    Pursuant to N.C.G.S. § 1-607(a), the State of North Carolina is entitled to three times actual damages plus the maximum penalty of $10,000 for each and every

false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## TWENTY-FOURTH CAUSE OF ACTION
### Oklahoma Medicaid False Claims Act
### Okla. Stat. §63-5053 *et seq.*

180.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 179 as if fully set forth herein.

181.    By virtue of the acts described above, Millennium knowingly presented or caused to be presented to Officers or employees of the State of Oklahoma a false claim for payment or approval, in violation of Okla. Stat. §63-5053.1B1.

182.    By virtue of the acts described above, Millennium knowingly made or used, or caused to be made or used, a false record or statement to obtain payment or approval by Oklahoma of a false claim, in violation of Okla. Stat. §63-5053.1B2.

183.    Oklahoma, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

184.    By reason of Millennium's acts, the State of Oklahoma has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

185.    Pursuant to Okla. Stat. §63-5053.1B, the State of Oklahoma is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## TWENTY-FIFTH CAUSE OF ACTION
### Rhode Island False Claims Act
### R.I. Gen. Laws §§ 9-1.1 *et seq.*

186.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 185 as if fully set forth herein.

187.    By virtue of the acts described above, Millennium knowingly presented or caused to be presented to officers or employees of Rhode Island false claims for payment or approval, in violation of R.I. Gen. Laws §§ 9-1.1-3(a)(1).

188.    By virtue of the acts described above, Millennium knowingly made or used, or caused to be made or used, false records or statements to obtain payment or approval by Rhode Island of false claims, in violation of R.I. Gen. Laws §§ 9-1.1-3(a)(2).

189.    Rhode Island, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

190.    By reason of Millennium's acts, the State of Rhode Island has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

191.    Pursuant to R.I. Gen. Laws §§ 9-1.1-3(a), the State of Rhode Island is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## TWENTY-SIXTH CAUSE OF ACTION
### Tennessee Medicaid False Claims Act
### Tenn. Code §§ 71-5-181 *et seq.*

192.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 191 as if fully set forth herein.

193.    By virtue of the acts described above, Millennium presented, or caused to be presented, to the state a claim for payment under the Medicaid program knowing such claim is false or fraudulent, in violation of Tenn. Code § 71-5-182(a)(l)(A).

194.    By virtue of the acts described above, Millennium made, used, or caused to be made or used, a record or statement to get a false or fraudulent claim under the Medicaid program paid for or approved by the state knowing such record or statement is false, in violation of Tenn. Code § 71-5-182(a)(1)(B).

195.    Tennessee, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

196.    By reason of Millennium's acts, the State of Tennessee has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

197.    Pursuant to Tenn. Code § 71-5-182(a)(1), the State of Tennessee is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## TWENTY-SEVENTH CAUSE OF ACTION
### Texas Medicaid Fraud Prevention Law
Tex. Hum. Res. Code §§ 36.001 *et seq.*

198.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 197 as if fully set forth herein.

199.    By virtue of the acts described above, Millennium knowingly presented or caused to be presented false or fraudulent claims to the State of Texas for payment or approval, in violation of Tex. Hum. Res. Code § 36.002.

200.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce Texas to approve and pay such false and fraudulent claims, in violation of Tex. Hum. Res. Code § 36.002.

201.    Texas, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

202.    By reason of Millennium's acts, the State of Texas has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

203.    Pursuant to, in violation of Tex. Hum. Res. Code § 36.052, the State of Texas is entitled to two times the amount of actual damages plus the maximum penalty of $15,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## TWENTY-EIGHTH CAUSE OF ACTION
### Virginia Fraud Against Taxpayers Act
### Va. Code §§ 8.01-216.1 *et seq.*

204.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 203 as if fully set forth herein.

205.    By virtue of the acts described above, Millennium knowingly presented, or caused to be presented, to an officer or employee of the Commonwealth of Virginia a false or fraudulent claim for payment or approval," in violation of Va. Code § 8.01-216.3(A)(l).

206.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Commonwealth of Virginia in violation of Va. Code § 8.01-216.3(A)(2).

207.    Virginia, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

208.    By reason of Millennium's acts, the Commonwealth of Virginia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

209.    Pursuant to Va. Code § 8.01-216.3(A), the Commonwealth of Virginia is entitledto three times the amount of actual damages plus the maximum penalty of

$10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

**TWENTY-NINTH CAUSE OF ACTION**
Wisconsin False Claims For Medical Assistance Law
Wis. Stat. §§ 20.931 *et seq.*

210.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 209 as if fully set forth herein.

211.    By virtue of the acts described above, Millennium knowingly presented, or caused to be presented, to an officer or employee or agent of Wisconsin a false claim for medical assistance in violation of Wis. Stat. § 20.931(2)(a).

212.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to obtain approval or payment of a false claim for medical assistance by the State of Wisconsin in violation of Wis. Stat. § 20.931(2)(b).

213.    Wisconsin, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

214.    By reason of Millennium's acts, the State of Wisconsin has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

215.    Pursuant to Wis. Stat. § 20.931(2), the State of Wisconsin is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for

each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

### THIRTIETH CAUSE OF ACTION
District of Columbia False Claims Act
D.C. Code §§ 2-308.03 *et seq.*

216.    Relator repeats and realleges the allegations set forth in paragraphs 1 through 215 as if fully set forth herein.

217.    By virtue of the acts described above, Millennium knowingly presented, or caused  to be presented, to an officer or employee of the District of Columbia a false claim for payment or approval, in violation of D.C. Code § 2-308.14(a)(1).

218.    By virtue of the acts described above, Millennium knowingly made, used, or caused to be made or used, a false record or statement to get a false claim paid or approved by the District of Columbia, in violation of D.C. Code § 2-308.14(a)(2).

219.    The District of Columbia, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Millennium, paid and continues to pay the claims that would not be paid but for the acts and/or conduct of Millennium as alleged herein.

220.    By reason of Millennium's acts, the District of Columbia has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

221.    Pursuant to D.C. Code § 2-308.14(a), the District of Columbia is entitled to three times the amount of actual damages plus the maximum penalty of $10,000 for

each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Millennium.

## CONCLUSION

**WHEREFORE,** the Relator, on behalf of the United States, the States and the District, hereby prays that after a trial, this Court:

1. Enter judgment holding Millennium liable for a civil penalty of $10,000 for each violation of the False Claims Act committed by Millennium;

2. Enter a judgment against Millennium for three times the amount of damages sustained by the United States because of the acts of Millennium;

3. Enter judgment holding Millennium liable for the maximum civil penalties permitted for each violation of the state false claims acts pled herein;

4. Enter judgment against Millennium for the damages sustained by the States and the District because of the acts of Millennium described herein, multiplied, as permitted under the state statutes identified herein;

5. Award the Relator a percentage of the proceeds of the action in accordance with 31 U.S.C. § 3730;

6. Award the Relator a percentage of the proceeds of recoveries under the state statutes identified herein as permitted under each state's statute;

7. Award the Relator his costs and reasonable attorney's fees for prosecuting this action; and

8.  Enter such other relief which the Court finds just and equitable.

Respectfully submitted

**Mark McGuire, on behalf
Of the United States of America; State
Of California; State of Colorado; State
of Connecticut; State Of Delaware;
District Of Columbia; State Of Florida;
State Of Georgia; State Of Hawaii;
State Of Illinois; State Of Indiana;
State Of Iowa; State of Louisiana; State
Of Maryland; State of Michigan; State
Of Minnesota; State Of Montana;
Commonwealth Of Massachusetts;
State Of Nevada; State Of New Jersey;
State Of New Mexico; State Of New
York; State Of North Carolina; State of
Oklahoma: State Of Rhode Island;
State Of Tennessee; State Of Texas;
Commonwealth Of Virginia; and State
Of Wisconsin**

By their attorneys

*/s/ Thomas M. Greene*
Thomas M. Greene, Esq.  BBO# 210020
tgreene@greenellp.com
Michael Tabb, Esq.  BBO# 491310
matabb@greenellp.com
Ilyas J. Rona, Esq.  BBO# 642964
irona@greenellp.com
**GREENE LLP**
One Liberty Square, Suite 1200
Boston, MA 02109
(617) 261-0040