United States District Court
District of Massachusetts

```
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━  )
                                )
UNITED STATES OF AMERICA, et al., ex rel.  )
ROBERT CUNNINGHAM,              )
                                )
         Plaintiffs,            )   Civil Action No.
                                )   09-12209-NMG
         v.                     )
                                )
MILLENNIUM LABORATORIES, INC. et al.,  )
                                )
         Defendants.            )
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━  )
                                )
UNITED STATES OF AMERICA, et al., ex rel.  )
MARK MAGUIRE,                   )
                                )
         Plaintiffs,            )   Civil Action No.
                                )   12-10132-NMG
         v.                     )
                                )
MILLENNIUM LABORATORIES, INC. et al.,  )
                                )
         Defendant.             )
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━  )
                                )
UNITED STATES OF AMERICA, et al., ex rel.  )
RYAN UEHLING,                   )
                                )
         Plaintiffs,            )   Civil Action No.
                                )   12-10631-NMG
         v.                     )
                                )
MILLENNIUM LABORATORIES, INC. et al.,  )
                                )
         Defendants.            )
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━  )
```

```
_____ )
                                  )
UNITED STATES OF AMERICA, *et al., ex rel.* )
OMNI HEALTHCARE, INC. and JOHN DOE,  )
                                  )
          Plaintiffs,             )      Civil Action No.
                                  )      13-10825-NMG
          v.                      )
                                  )
MILLENNIUM LABORATORIES, INC. *et al.*,  )
                                  )
          Defendants.             )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Consolidated before this Court are the <u>qui</u> <u>tam</u> actions of six sets of relators against defendant Millennium Laboratories, Inc. (now known as Millennium Health, LLC) ("Millennium"). After the government intervened in several of the cases and reached a settlement with Millennium, relator Mark McGuire ("McGuire") filed a cross-claim against the other relators seeking a declaratory judgment that he is entitled to the relators' share of the settlement money.  Pending before the Court are motions filed by four of the relators to dismiss that cross-claim, a motion to seal certain related documents and a motion to strike certain documents and statements.

## I.  **Background**

In December, 2009, Robert Cunningham ("Cunningham"), an attorney who had worked as a compliance officer at a laboratory testing company that competed with Millennium, filed a lawsuit

against Millennium pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.  The FCA allows whistleblowers to file lawsuits on behalf of the federal government, known as qui tam actions, exposing fraudulent claims charged.  The whistleblower, known as a "relator", may recover damages on behalf of the government and receive a portion of those damages himself.  FCA lawsuits are required to remain sealed for 60 days, unless the Court permits an extension of that time, in order to allow the government to investigate the claims before deciding whether to intervene.

Cunningham's claim alleged that Millennium had defrauded the government by submitting claims for testing that was excessive and medically unnecessary, despite its certifications to the contrary.  Cunningham also alleged that Millennium caused numerous physicians to submit fraudulent claims to the government.  At the time he filed his complaint and served it on the government, Cunningham also provided the government with a disclosure statement containing additional information and voluminous source materials to substantiate his allegations and to assist the government in investigating the alleged fraud.

Cunningham continued to cooperate with the government and to provide additional materials until his death in December, 2010.  His estate then continued his FCA action by filing an amended complaint in February, 2011.  The estate and its

attorneys (hereinafter also referred to as "Cunningham") also continued to respond to requests from the government pursuant to its ongoing investigation and to provide the government with additional materials.

A few days after Cunningham filed its amended complaint, the time during which the government was permitted to intervene and keep the case sealed expired.  The government entered a notice that it would not intervene in the case for the time being and later elected not to intervene at all.  The case was unsealed and subsequently dismissed by the district court. After an appeal, a partial remand and a second dismissal, Cunningham's case is currently on appeal to the First Circuit for a second time, although that appeal has been stayed pending the outcome of these proceedings.

In January, 2012 Mark McGuire, a former laboratory director of operations at a medical center, filed another FCA action against Millennium.  McGuire's action also alleged that Millennium submitted claims for medically unnecessary testing and caused physicians to submit fraudulent claims. The government elected to intervene in McGuire's case.  All told, eight FCA cases have been filed against Millennium by different relators and the government has chosen to intervene in three.

In October, 2015 the federal government and several intervening states reached a settlement agreement with

Millennium ("the Settlement Agreement") through which Millennium agreed to pay $227,000,000, plus interest, in exchange for the government's forbearance with respect to certain claims. Those claims ("the Covered Conduct") were expressly limited to the period between January 1, 2008 and May 20, 2015, and were described as:

> (1) excessive and unnecessary [urine drug testing ("UDT")] ordered by physicians without an individualized assessment of patient need . . . and

> (2) UDT referred by physicians who received free point-of-care drug testing supplies in violation of the Stark Law, 42 U.S.C. § 1395nn, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b).

Seven of the eight relators joined in the agreement, which requires them to dismiss their pending actions with prejudice after post-settlement proceedings have been concluded. The agreement provides that 15% of the settlement be set aside for the relators ("the Relator's Share"), but does not prescribe how the money is to be apportioned among the relators. Instead, the agreement demurs on that subject and leaves it to the Court to apportion the 15% if the relators are unable to reach an agreement among themselves.

In October, 2015, after the filing of the settlement, relator McGuire filed a cross-claim against the other relators seeking a declaratory judgment that he is entitled to the Relator's Share. Four of the other relators subsequently filed

motions to dismiss his cross-claim, which motions are the
subject of this memorandum and order.

**II.**   **Cunningham's Motion to Dismiss**

Cunningham moves the Court to dismiss McGuire's cross-claim
both for lack of subject matter jurisdiction under Fed. R. Civ.
P. 12(b)(1) and for failure to state a claim under Fed. R. Civ.
P. 12(b)(6).

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

**1. Legal Standard**

In opposing a motion to dismiss for lack of subject matter
jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears
the burden of establishing that the Court has jurisdiction.
Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  If
the defendant mounts a "sufficiency challenge", the court will
assess the sufficiency of the plaintiff's jurisdictional
allegations by construing the complaint liberally, treating all
well-pled facts as true and drawing all reasonable inferences in
the plaintiff's favor. Valentin v. Hospital Bella Vista, 254
F.3d 358, 363 (1st Cir. 2001).

If, however, the defendant advances a "factual challenge"
by controverting the accuracy, rather than the sufficiency, of
the alleged jurisdictional facts, "the plaintiff's
jurisdictional averments are entitled to no presumptive weight"
and the court will consider the allegations by both parties and

resolve the factual disputes. <u>Id.</u>  The court has "broad authority" in conducting the inquiry and can, in its discretion, consider extrinsic evidence in determining its own jurisdiction. <u>Id.</u> at 363-64.

### 2. Analysis

#### a. Appropriateness of a Jurisdictional Inquiry

Cunningham asserts that McGuire's declaratory judgment cross-claim is jurisdictionally barred because McGuire was not the "first to file" relator in this set of FCA cases.  The "first to file" rule of the FCA states that

> [w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

31 U.S.C. § 3730(b)(5).  The provision precludes the filing of subsequent <u>qui tam</u> cases once a relator has notified the government of a specific fraud, preventing copycat relators from bringing claims simply to gain a portion of the relator's share. <u>See</u> <u>United States ex rel. Heineman-Guta</u> v. <u>Guidant Corp.</u>, 718 F.3d 28, 35 (1st Cir. 2013).  Cunningham avers that because he filed his FCA action before McGuire filed his, McGuire's claims are barred.

The United States Court of Appeals for the First Circuit ("the First Circuit") considers the "first to file" provision to be jurisdictional. <u>United States ex rel. Ven-A-Care of the</u>

Florida Keys, Inc. v. Baxter Healthcare Corp., 772 F.3d 932, 936
(1st Cir. 2014) [hereinafter "Ven-A-Care"] (citing United States
ex rel. Wilson v. Bristol-Myers Squibb, Inc., 750 F.3d 111, 117
(1st Cir. 2014)).  McGuire offers, however, several reasons why
this Court should not apply that rule as a jurisdictional bar in
this case.

     First, McGuire argues that the Court should treat his
cross-claim differently because it is a claim for declaratory
judgment rather than an affirmative FCA claim against
Millennium.  The "first to file" provision does not, however,
apply by its terms only to affirmative FCA claims.  Instead, it
bars all "related action[s] based on the facts underlying the
pending action."  McGuire does not explain how his cross-claim,
which by its very nature involves all of the facts underlying
not only his affirmative FCA claim but also the FCA claims of
the other relators, is not a "related action."

     Next, McGuire contends that the "first to file" bar should
not apply because Cunningham's action is not a "pending action"
for the purposes of 31 U.S.C. § 3730(b)(5).  He declares that

          a final judgment, with full res judicata effect, has
          been entered against Cunningham that conclusively
          precludes it from receiving any recovery for its FCA
          claims against Millennium.

     Although Cunningham's complaint was ultimately dismissed,
his case was, nevertheless, still "pending" at all relevant

times.  The dismissal had not yet occurred when McGuire filed his complaint.  See United States ex rel. Bartz v. Ortho-McNeil Pharmaceutical, Inc., 856 F. Supp. 2d 253, 258 (D. Mass. 2012) (holding that a later-dismissed action is "pending" for the purposes of § 3730(b)(5) if it was pending when the second relator brought her claim).  Furthermore, Cunningham's appeal of the dismissal was ongoing when he entered into the Settlement Agreement.  See United States ex rel. Carter v. Haliburton Co., No. 13-1188, 2014 WL 1767514 (E.D. Va. May 2, 2014) (holding that a qui tam suit is "pending" when it is on direct review).  Accordingly, McGuire's second contention is also unavailing.

Finally, McGuire asserts that 28 U.S.C. § 1331 provides the Court with federal question jurisdiction over his cross-claim because it is a declaratory judgment based upon the FCA, a federal law.  See, e.g., Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 19 (1983).  This argument misses the mark.  The first to file provision serves as an exception to the Court's jurisdiction. It operates, therefore, to exclude "related actions" which would normally fall within the Court's jurisdiction, including McGuire's cross-claim.

### b. Materials to be Considered

Because Cunningham disputes the factual accuracy of McGuire's contention that he was the "first to file" his FCA

-9-

claim, Cunningham's motion to dismiss constitutes a factual, rather than a sufficiency, challenge.  Accordingly, the Court may consider evidence extrinsic to McGuire's complaint in resolving the motion. See Valentin, 254 F.3d at 363-64.  McGuire does not dispute the Court's authority in this regard, but asserts that the materials Cunningham has provided for the Court's consideration are improper.

First, McGuire argues that the Court may consider only the complaints when determining which of the two relators was the first to file an action detailing the Covered Conduct. Cunningham does not dispute that his claim of "first to file" status is based largely on documents and information he provided the government which are not contained in his complaint.  He has filed those documents with his motion as an appendix ("the Cunningham Appendix").  McGuire cites a string of cases in this and other circuits which have referred, in passing, to the fact that courts compare the relators' complaints when assessing first to file status. See, e.g., Ven-A-Care, 772 F.3d at 937-38. None of those cases addressed, however, the question of whether documents outside the complaint may also be considered.

Indeed, contrary to McGuire's contention, the statute itself provides no basis for such a restriction.  The "first to file" provision broadly bars new actions that are "related . . . based on the facts underlying the pending action." See 31 U.S.C.

-10-

§ 3730(b)(5). It does not restrict consideration to the complaints but rather focuses more broadly on the factual content of the action itself. Moreover, the provision pertinent to the requirements for a relator to commence an FCA action (appropriately titled "Actions by private persons") mandates that

> [a] copy of the complaint and written disclosure of substantially all material and information the person possesses shall be served on the government.

Id. § 3730(b)(2). As discussed in greater detail below, the Court's "first to file" analysis focuses on whether the relator "provided the government sufficient notice that it was the potential victim of fraud worthy of investigation." Heineman-Guta, 718 F.3d at 33. Because written disclosures outside the complaint are a required component of the "notice" that a relator must provide for the government, the Court's analysis would be incomplete if it did not consider such documents.

McGuire attempts to bolster his argument by asserting that the First Circuit's decision in United States ex rel. Duxbury v. Ortho Biotech Products, L.P. bars our consideration of materials extraneous to the complaint. See 579 F.3d 13 (1st Cir. 2009). Duxbury, however, states no such general rule. To the contrary, the Duxbury Court acknowledged that it is appropriate for a Court to consider extraneous materials when deciding a 12(b)(1) motion based upon the "first to file" rule. Id. at 33. The

Court declined to review a document offered by a relator because that document was provided to the government after the opposing relator had filed his complaint.  Consequently, the document was irrelevant to the "first to file" analysis, which examines the sufficiency of the information provided by the first relator before the second relator files.

All of the materials included in the Cunningham Appendix except for the last document, Cunningham's Third Disclosure Statement, were submitted to the government before McGuire filed his FCA action.  Duxbury does not, therefore, bar the Court's consideration of those materials.  Because the Third Disclosure Statement was filed after McGuire's complaint it cannot, however, support Cunningham's claim to "first to file" status. Accordingly, the Court will not consider it.

Finally, McGuire also declares that the Court cannot consider the Cunningham Appendix because the Court may consult only "materials of evidentiary quality," Valentin, 254 F.3d at 363, and Cunningham's Appendix has not been authenticated pursuant to Fed. R. Evid. 901.  Specifically, McGuire complains that Cunningham did not file an accompanying affidavit authenticating the documents in the Appendix.  That problem was remedied, however, when Cunningham filed a signed and sworn affidavit of Robert A. Griffith on January 19, 2016 describing

the documents and attesting to their authenticity (Docket No. 148).  Accordingly, this argument is now moot.

### c. First to File Analysis

Finally, the Court considers the merits of the "first to file" analysis.  In order for a <u>qui tam</u> action that was filed first to bar a subsequently filed action, it must provide enough details

> to give the government sufficient notice to initiate
> an investigation into allegedly fraudulent practices.

<u>Heineman-Guta</u>, 718 F.3d at 36–37.  Accordingly, a later-filed action is barred if it states "all the essential facts of a previously-filed claim" or "the same elements of a fraud described in an earlier suit." <u>Duxbury</u>, 579 F.3d at 32.  Here, because the parties seek to claim the Relator's Share rather than to collect damages through an affirmative FCA action, the relevant "fraud" is the Covered Conduct described by the Settlement Agreement.

After considering Cunningham's complaint, first amended complaint (which was filed prior to the commencement of McGuire's action) and the documents in the Cunningham Appendix which were provided to the government prior to the filing of McGuire's complaint, the Court finds that Cunningham did sufficiently allege the Covered Conduct so as to bar McGuire's claim.  Cunningham alleged that Millennium caused physicians to

-13-

order excessive and unnecessary urine drug testing without an individualized assessment of patient need.

Cunningham explained that Millennium convinced doctors to use its in-office, multi-panel, qualitative screening tests, which screened for eleven commonly tested drugs, to test urine samples for multiple drugs at the same time.  Millennium then convinced physicians to implement "standing orders" which dictated that urine samples would be sent to Millennium for quantitative testing to confirm the results of the in-office screening tests.  That confirmation testing was reflexive, requiring samples to be re-tested for all drugs, regardless of whether there was any reason a) to doubt the in-office results or b) to test the patient for that particular drug.  Such testing without an individualized assessment of patient need was wasteful and contrary to the existing standard of care. Cunningham further alleged that Millennium profited from billing the government for such excessive drug testing.

In order to convince doctors to participate in such a scheme, Cunningham alleged, Millennium encouraged them to bill for the in-office, multi-panel test in a manner which would garner them reimbursement "far in excess of the value of the test."  Cunningham asserted that Millennium provided the multi-panel test kits at a low price (less than $10) and encouraged doctors to bill for miscellaneous clinical tests when they used

the kits rather than for just one multi-panel test.  Such a practice was, according to Cunningham, fraudulent and abusive and a violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, and the Stark Law, 42 U.S.C. § 1395nn.  Millennium, nevertheless, informed doctors that it was a proper method of billing.

McGuire correctly points out that Medicare later revised its reimbursement rules so that physicians could no longer bill for multiple tests derived from a multi-panel qualitative test. Consequently, Millennium changed its incentive structure for doctors by providing the multi-panel test kits for free and encouraging them to bill insurers for the tests.  This was improper because doctors were permitted to bill for such tests only if they had paid Millennium for the test kits. Accordingly, such conduct also constituted a violation of the Anti-Kickback Statute and the Stark Law.  It is the latter incentive structure, and not the former, which is included within the Covered Conduct in the Settlement Agreement.

McGuire contends that Millennium's revised incentive structure constitutes "a wholly different fraud" from the one alleged by Cunningham and, therefore, Cunningham did not sufficiently allege the Covered Conduct to claim "first to file" status.  Cunningham's description of the fraud included, however, all of the essential elements of the Covered Conduct.

-15-

He informed the government that Millennium was providing its multi-panel test kits to doctors and encouraging them to use the test kits to bill in excess of their permissible value.  That benefitted the doctors by allowing them to collect additional revenue from payors.  In exchange, Millennium required doctors to send the test results to Millennium for quantitative confirmation without regard to the medical necessity of such confirmation testing.

Although the exact method of mis-billing for the multi-panel tests changed when Medicare revised its reimbursement rules, Cunningham's materials provided the government with "sufficient notice to initiate an investigation into [Millennium's] allegedly fraudulent practices." Ven-A-Care, 772 F.3d at 938.  Medicare's billing policies are publicly available documents and accordingly the government, through its investigation, could have discovered changes in Millennium's fraudulent incentive structure caused by those policies.  As the First Circuit has noted,

> once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.

Ven-A-Care, 772 F.3d at 942.  Here, Cunningham alleged the "essential facts" of the Covered Conduct, and therefore his FCA action bars McGuire's. Cf. Wilson, 750 F.3d at 118 (relator's action alleging off-label drug promotion barred by earlier-filed

-16-

suit alleging similar scheme involving a different off-label use).

## B. Motion to Dismiss for Failure to State a Claim

### 1. Legal Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

### 2. Analysis

Cunningham also moves the Court to dismiss McGuire's cross-claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  He proposes no new arguments, but rather requests that the Court consider his "first to file" arguments under the 12(b)(6) standard.  As explained above, however, Cunningham's arguments rely extensively on documents outside of McGuire's complaint.  Without such support, those arguments fail. McGuire's complaint states a plausible claim that he is the "first to file" relator although, as explained above, the Court

-17-

finds that once Cunningham's submissions are considered it becomes apparent that McGuire is not.  Accordingly, the motion to dismiss on 12(b)(6) grounds will be denied.

### III.   The Other Relators' Motions to Dismiss

Three other sets of relators, Ryan Ueling, Omni Health Care and Amadeo Pesce, filed motions to dismiss McGuire's cross-claim.  Each submitted a nearly identical memorandum of law arguing that the cross-claim should be dismissed on three grounds: 1) under Fed. R. Civ. P. 12(b)(1) because McGuire was not the first to file vis-à-vis Cunningham, 2) under Fed. R. Civ. P. 12(b)(1) because McGuire was not the first to file vis-à-vis the moving relator and 3) under Fed. R. Civ. P. 12(b)(6).  Because the Court has found that McGuire was not first to file vis-à-vis Cunningham, the motions will be allowed, in part.  Given that McGuire's cross-claim will be dismissed on those grounds the Court need not, however, address the relators' other arguments.  Accordingly, the motions to dismiss of the subject relators will be denied as moot to the extent they rely on the second and third grounds.

### IV.   Cunningham's Motion to Seal the Cunningham Appendix

There is a well-established presumption of public access to judicial documents. Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 408 (1st Cir. 1987).  Non-disclosure of judicial records can be justified for "only the most compelling

reasons." Id.  District courts therefore "must carefully balance the competing interests that are at stake in the particular case." Siedle v. Putnam Investments, Inc., 147 F.3d 7, 10 (1st Cir. 1998).

What constitutes sufficient cause depends on the nature of the records the parties seek to impound. Bradford & Bigelow, Inc. v. Richardson, No. 13-cv-11025-RWZ, 2015 WL 3819234 at *2 (D. Mass. June 19, 2015).  In civil cases, interests which courts have found sufficient to justify impoundment include trade secrets, confidential business information, information covered by a recognized privilege such as the attorney-client privilege and information required by statute to be sealed. See id. at *2; Baxter Int'l, Inc. v. Abbott Laboratories, 297 F.3d 544, 546 (7th Cir. 2002).  Good cause must be established "on a document-by-document basis." Bradford & Bigelow, 2015 WL 3819234 at *1.

Cunningham moves the Court to seal both his Appendix and his memorandum in support of his motion to dismiss, which relies extensively on materials from the Appendix.  As grounds, he avers that both constitute opinion work product from his FCA action against Millennium and they are, therefore, subject to absolute or near-absolute immunity from discovery. See, e.g., Caremark, Inc. v. Affiliated Computer Services, Inc., 195 F.R.D. 610, 616 (N.D. Ill. 2000).  In response, McGuire does not

dispute that the work product privilege applies but instead argues that Cunningham has waived work product protection by placing those documents directly at issue in this dispute.  See, e.g., Columbia Data Products, Inc. v. Autonomy Corp., No. 11-cv-12077-NMG, 2012 WL 6212898, at *16 (D. Mass. Dec. 12, 2012).

The Court agrees with McGuire that Cunningham has put the documents in issue in this case.  This situation differs from the context in which the work product privilege is typically invoked, however, because Cunningham is not attempting to conceal the documents from McGuire.  Instead, by sealing the documents, Cunningham seeks to ensure that no third person obtains access to the documents.  Accordingly, Cunningham does not attempt to use his disclosures "as both a sword and a shield" by invoking them against while withholding them from McGuire. See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 24 (1st Cir. 2003).

The Court agrees with McGuire that Cunningham has not made the requisite showing of good cause, on a document-by-document basis, as to why the presumption of public disclosure should be overruled.  Although Cunningham's disclosures were clearly prepared "in anticipation of litigation," Fed. R. Civ. P. 26(b)(3), that litigation has ended.  The government has negotiated a Settlement Agreement with Millennium and, upon

execution of that agreement, Cunningham agreed to dismiss his FCA action against Millennium with prejudice.

Cunningham has provided no reason why ongoing secrecy is warranted, especially given the considerable resources which must be expended by the Court to process and maintain sealed documents. <u>Dunkin Donuts Franchised Restaurants, LLC</u> v. <u>Agawam Donuts, Inc.</u>, No. 07-cv-11444-RWZ, 2008 WL 427290, at *1 (D. Mass. Feb. 13, 2008).  The motion to seal will, therefore, be denied, without prejudice.

## V.  McGuire's Motion to Strike the Cunningham Appendix

Finally, McGuire moves to strike the Cunningham Appendix because it lacks evidentiary foundation.  He also asks the Court to strike two statements in Cunningham's memorandum of law which he claims are false.

McGuire first declares that the Court should strike Cunningham's Appendix because the Court may not consider evidence outside the complaints when determining the "first to file" status of a relator.  He also asserts that the Appendix should be stricken because Cunningham did not file an accompanying affidavit authenticating the documents in the Appendix.  As explained above, neither of those arguments is availing and, therefore, the Court will not strike the Appendix.

McGuire further contends that the Court should strike two statements in Cunningham's memorandum of law which he contends

-21-

are false.  The first statement, on page 4 of the memorandum,
proclaims that "[t]he Government never affirmatively declined
Cunningham's case."  McGuire argues that this statement is false
because on June 28, 2011 the United States filed a notice in
Cunningham's case stating that it was definitively "declining to
intervene in this action."  In response, Cunningham has
retracted the statement.  Consequently, it is no longer before
the Court and it was not considered during the Court's analysis
of the other pending motions.

The second disputed statement, also on page 4, avers that

> [i]t is the culmination of the ongoing investigation
> Cunningham's filings initiated that resulted in the
> $227 million settlement now before the Court.

That statement summarizes Cunningham's position that he was the
first relator to file his complaint and to provide the
government with the notice it needed to commence the
investigation which lead to the Settlement Agreement.  Such
argument about the central issue in Cunningham's motion to
dismiss is neither impermissible nor improper.  McGuire has
provided no evidence to the contrary that the government ceased
to investigate the scheme alleged by Cunningham and then,
separately at a later date, commenced the investigation which
lead to the Settlement Agreement based solely upon the
information provided by McGuire.  Accordingly, the Court finds

no reason to strike the statement and McGuire's motion will be denied.

## ORDER

For the foregoing reasons,

1. Cunningham's motion to dismiss (Docket No. 117) is, with respect to Fed. R. Civ. P. 12(b)(1), **ALLOWED**, but otherwise **DENIED,**

2. Uehling's motion to dismiss (Docket No. 120) is, with respect to Fed. R. Civ. P. 12(b)(1) vis-à-vis Cunningham's first to file status, **ALLOWED**, but otherwise **DENIED,**

3. Omni's motion to dismiss (Docket No. 123) is, with respect to Fed. R. Civ. P. 12(b)(1) vis-à-vis Cunningham's first to file status, **ALLOWED**, but otherwise **DENIED,**

4. Pesce's motion to dismiss (Docket No. 131) with respect to Fed. R. Civ. P. 12(b)(1) vis-à-vis Cunningham's first to file status, **ALLOWED**, but otherwise **DENIED,**

5. Cunningham's motion to seal (Docket No. 119) is **DENIED without prejudice** and

6. McGuire's motion to strike (Docket No. 142) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton _____
Nathaniel M. Gorton
United States District Judge

Dated August 19, 2016

-23-